# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

LANITRA JETER,

    PLAINTIFF,

VS.                                                                 CV NO.:

FAMILY THERAPY AND
WELLNESS CENTER OF
CENTRAL ALABAMA, LLC,

    DEFENDANT.                                       JURY TRIAL DEMANDED

## COMPLAINT

### I. JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, and 42 U.S.C. § 12101 et seq. This is a suit authorized and instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (ADA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2.    Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

3. Plaintiff, Lanitra Jeter, (hereinafter "Plaintiff") is a resident of Birmingham, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

4. Defendant Family Therapy and Wellness Center of Central Alabama, LLC (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 42 U.S.C. § 12101, *et seq.* Defendant employed at least fifteen (15) persons during the current or preceding calendar year. Therefore, this Court has personal jurisdiction over Defendant.

## III. STATEMENT OF FACTS

5. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6. Defendant hired Plaintiff on or about August 31, 2020.

7. Defendant employed Plaintiff as a Substance Abuse Therapist I.

8. Plaintiff suffers from the physical and/or sensory impairment of Type 2 Diabetes.

9. Plaintiff's Type 2 Diabetes affects her such that the major life activities of (1) seeing is inhibited with episodes of blurred vision, (2) eating due to Plaintiff being consistently nauseous reducing her appetite to the point that Plaintiff must force herself to eat, (3) walking, and (4) the functions of Plaintiff's endocrine system are restricted as compared to the average person in the general population.

10. Plaintiff's physician prescribes medication in the form of pills and injections to assist Plaintiff's endocrine system to function in a more efficient manner, but such medication still renders Plaintiff's endocrine system substantially limited as compared to the average person in the general population.

11. Plaintiff uses glasses in order to assist her limited vision and a glucose monitor to manage her Type-2 Diabetes, but such devices still make Plaintiff substantially limited as compared to the average person in the general population.

12. Plaintiff's physician diagnosed with Type 2 Diabetes on or about March 29, 2020.

13. Plaintiff suffers from the physical and/or sensory impairment of Adhesive Capsulitis.

14. Plaintiff's Adhesive Capsulitis is a syndrome defined as idiopathic restriction of shoulder movement and results in episodes commonly referred to as "frozen shoulder."

15. Plaintiff's Adhesive Capsulitis affects her such that the major life activities of caring for herself, performing manual tasks, eating, sleeping, and lifting are significantly restricted as compared to the average person in the general population.

16. Plaintiff uses a prescription sleeping aid a in order to sleep and a pain medication to manage the pain of the Adhesive Capsulitis episodes but such prescriptions result in Plaintiff being substantially limited as compared to the average person in the general population.

17. Plaintiff's physician diagnosed her with Adhesive Capsulitis on or about February 21, 2021.

18. Defendant is a provider of mental health services including treatment of addiction.

19. Plaintiff was qualified for the position of Substance Abuse Therapist I with or without a reasonable accommodation of her disabilities.

20. Defendant provided to Plaintiff a job description for Substance Abuse Therapist I that does not indicate or describe any need to be able to physically restrain clients.

21. From August 2020 until approximately mid-February 2021, due to COVID-19 social distancing precautions, Defendant's Substance Abuse Therapists

treated clients through telehealth services wherein the therapists and clients communicated directly through Zoom, office telephones, and cellphones.

22. Defendant employed Regina Mims.

23. Mims worked as Defendant's Chief Operating Officer.

24. Defendant employed Rachel Newman.

25. Defendant employed Richard Fallin.

26. Fallin worked as Defendant's Executive Director.

27. Defendant employed Danielle Parker

28. Parker worked as Defendant's SA Division Coordinator.

29. Defendant employed Judith Towner.

30. Towner worked as Defendant's H.R. Coordinator.

31. During mid-February 2021, Mims, Newman, and Fallin made the decision that Substance Abuse Therapists should start seeing clients in-person should the clients request an in-person therapy session.

32. Plaintiff emailed Towner requesting that she only see clients via Telehealth as her Type 2 Diabetes caused her to face increased risks should she contract COVID-19.

33. Towner responded that Plaintiff needed to provide a letter from her physician.

34. Due to Plaintiff's physician's policy of not providing testing for COVID-19 at his clinic, Plaintiff's physician's policy is to not "write documentation regarding COVID."

35. Plaintiff informed Towner of her physician's response and Towner stated that she must have a physician's letter or otherwise see clients in-person.

36. Plaintiff continued to see clients in-person, most of whom sought counseling through Telehealth communications.

37. During March 2021, Plaintiff treated a client in-person and on Defendant's premises with a known diagnosis of a DSM-V disorder.

38. During the consultation, Plaintiff suffered a frozen-shoulder episode related to her Adhesive Capsulitis.

39. During the consultation, the client became verbally aggressive, commenced pacing back and forth in the room, and speaking nonsense.

40. Plaintiff deescalated the client and the meeting concluded without incident.

41. Plaintiff feared she would not have been able to restrain the client had she been unable to deescalate his temper and emotions.

42. On March 8, 2021, Plaintiff met with Towner, Parker, Mims, and Newman wherein Plaintiff requested an accommodation that she only see clients via

Telehealth because of her episodes of suffering a frozen shoulder caused by Adhesive Capsulitis.

43. Towner responded that Plaintiff needed to provide a letter from her physician.

44. Plaintiff informed Towner she would not be able to obtain a letter quickly, but she could provide her medical records.

45. During the meeting, Mims informed Plaintiff that all she needed to treat her shoulder was physical therapy.

46. After the meeting, Plaintiff returned to her job duties.

47. During the week of March 8-12, Plaintiff treated only one client through a face-to-face meeting and the remainder of the meetings were via Telehealth.

48. On March 16, 2021, Plaintiff woke up and immediately knew she was suffering a frozen shoulder episode caused by Adhesive Capsulitis.

49. Pursuant to Defendant's policy and/or custom, Plaintiff texted Parker prior to her shift about her shoulder suffering from an episode and that she would be absent for the day.

50. Parker texted Plaintiff stating that "Leadership is asking for a doctor's excuse" to which Plaintiff responded "im not going to the doctor."

51. However, because Defendant's "leadership" requested a doctor's note, Plaintiff decided to seek medical treatment on March 16, 2021.

52. On March 16, 2021, MedHelp treated Plaintiff and provided her with a return-to-work slip stating she could return on March 17, 2021.

53. Prior to presenting the Defendant with the return-to-work slip, Defendant terminated Plaintiff's employment on March 16, 2021.

54. At approximately 1:00 p.m. on March 16, 2021, Towner telephoned Plaintiff and informed Plaintiff that Defendant terminated her employment for insubordination.

55. Towner provided no factual support or explanation as to how or why Plaintiff was allegedly insubordinate.

56. Defendant utilizes a "Flex Time" policy, wherein an employee may miss work hours during the workday and make those work hours up at a later date.

57. As of March 16, 2021, Plaintiff had available Flex Time.

58. Defendant utilized a progressive discipline policy.

59. Plaintiff had no written warnings or disciplinary write-ups made part of that policy.

60. Plaintiff filed a claim with the Alabama Department of Labor seeking unemployment compensation benefits.

61. Defendant opposed Plaintiff's claim seeking unemployment compensation benefits and stated that Defendant terminated Plaintiff's employment "for being absent from work without permission from your employer after previous warning."

62. Defendant's statement to the Alabama Department of Labor is false as Defendant never warned Plaintiff regarding any violation of Defendant's attendance policy.

63. Defendant never issued Plaintiff any written warnings pursuant to its progressive discipline policy.

## IV. COUNT ONE - Americans with Disabilities Act - Termination

64. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 63 above as if fully set forth herein.

65. Defendant terminated Plaintiff's employment because of her disability, specifically, Plaintiff reported her absence due to a frozen shoulder episode caused by Adhesive Capsulitis.

66. But for Plaintiff's disability, Defendant would not have terminated Plaintiff's employment.

67. Defendant was substantially motivated by Plaintiff's disability and continuing need for healthcare in making the decision to terminate Plaintiff's employment.

68. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## V. COUNT TWO – Americans with Disabilities Act – Failure to Accommodate

69. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 68 above as if fully set forth herein.

70. On March 8, 2021, Plaintiff met with Towner, Parker, Mims, and Newman wherein Plaintiff requested an accommodation that she only see clients via Telehealth because of her episodes of suffering a frozen shoulder caused by Adhesive Capsulitis.

71. From August 2020 until mid-February 2021, Defendant's Substance Abuse Therapist I employees only treated clients via Telehealth, such that the reasonable accommodation Plaintiff sought existed and did not result in Defendant suffering any undue burden.

72. From August 2020 until mid-February 2021, Defendant's Substance Abuse Therapist I employees only treated clients via Telehealth, such that the Plaintiff and all other Substance Abuse Therapist I employees could perform the essential functions of their job.

73. Defendant failed to provide Plaintiff with any response or alternative response to her request for a reasonable accommodation or otherwise explain why

her request for a reasonable accommodation resulted in it suffering an undue burden on its business operations.

74. Defendant failed to provide Plaintiff with the reasonable accommodation sought on March 8, 2021.

75. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VI. COUNT THREE - Americans with Disabilities Act – Retaliation

76. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 75 above as if fully set forth herein.

77. On March 8, 2021, Plaintiff met with Towner, Parker, Mims, and Newman wherein Plaintiff requested an accommodation that she only see clients via Telehealth because of her episodes of suffering a frozen shoulder caused by Adhesive Capsulitis.

78. On March 16, 2021, Defendant terminated Plaintiff's employment.

79. But for Plaintiff's statutorily protected activity, Defendant would not have terminated Plaintiff's employment.

80. As a result of Defendant's retaliatory termination decision in violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.  Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Americans with Disabilities Act;

B.  Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

C.  Award her back pay, together with employment benefits, front pay, compensatory damages (including emotional distress); punitive damages; special damages; nominal damages;

D.  Attorneys' fees and costs;

E.  Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 12101 *et seq.* that the actions of Defendant violated the law; and,

F.  Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

/s/ Allen D. Arnold
Allen D. Arnold

OF COUNSEL:

ALLEN D. ARNOLD, Attorney at Law
6 Office Park Circle, Suite 209
Birmingham, AL 35223
T: (205) 252-1550
ada@allenarnoldlaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

/s/
OF COUNSEL

DEFENDANT'S ADDRESS:
Family Therapy and Wellness Center
of Central Alabama, LLC
c/o Vaneshia Jenkins
2061 Highview Way
Calera AL 35040